UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DONALD IRWIN,

      Plaintiff,

v.                                Case No.:  2:20-cv-230-MRM

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

## OPINION AND ORDER

Plaintiff Donald Irwin filed a Complaint on April 3, 2020.  (Doc. 1).  Plaintiff

seeks judicial review of the final decision of the Commissioner of the Social Security

Administration ("SSA") denying his claim for supplemental security income.  The

Commissioner filed the transcript of the administrative proceedings (hereinafter

referred to as "Tr." followed by the appropriate page number), and the parties filed a

joint memorandum detailing their respective positions.  (Doc. 30).  For the reasons

set forth herein, the decision of the Commissioner is **AFFIRMED** pursuant to §

205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.    Social Security Act Eligibility

The law defines disability as the inability to do any substantial gainful activity

by reason of any medically determinable physical or mental impairment that can be

expected to result in death or that has lasted or can be expected to last for a

continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1)(A),

1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  The impairment must be severe,

making the claimant unable to do his previous work or any other substantial gainful

activity that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20

C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911.  Plaintiff bears the burden of

persuasion through step four, while the burden shifts to the Commissioner at step

five.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

## II.      Procedural History

Plaintiff filed a claim for supplemental security benefits on April 25, 2017,

alleging the same date as the disability onset date.  (Tr. at 15).[1]  Plaintiff's claim was

denied at the initial level on July 19, 2017, and upon reconsideration on October 6,

2017.  (*Id.*).  Plaintiff requested an administrative hearing, which was held on

November 27, 2018, before Administrative Law Judge ("ALJ") Eric Anschuetz.  (*Id.*

at 36-89).  The ALJ issued an unfavorable decision on March 26, 2019.  (*Id.* at 12-

35).  On February 12, 2020, the Appeals Council denied Plaintiff's request for

review.  (*Id.* at 1-6).  Plaintiff then filed his Complaint with this Court on April 3,

2020, (Doc. 1), and the parties consented to proceed before a United States

Magistrate Judge for all purposes, (Docs. 17, 20).  The matter is, therefore, ripe.

---

[1]  The SSA revised the rules regarding the evaluation of medical evidence and
symptoms for claims filed on or after March 27, 2017.  *See* Revisions to Rules
Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (Jan. 18,
2017).  The new regulations apply in Plaintiff's case because Plaintiff filed his claim
after March 27, 2017.

III.     **Summary of the Administrative Law Judge's Decision**

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that he is disabled. *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). An ALJ must determine whether the claimant:  (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform his past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004).  The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

At step one, the ALJ found that Plaintiff "has not engaged in substantial gainful activity since April 25, 2017, the application date (20 [C.F.R. §] 416.971 *et seq.*)."  (Tr. at 17).  At step two, the ALJ found that Plaintiff has the following severe impairments:  "cervical degenerative disc disease; spondylosis of lumbar region without myelopathy or radiculopathy; myalgia; depression; and anxiety.  (20 [C.F.R. §] 416.920(c))."  (*Id.*).  At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1 (20 [C.F.R. §§] 416.920(d), 416.925 and 416.926)."  (*Id.* at 19).

At step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC"):

> [T]o perform light work as defined in 20 [C.F.R. §] 416.967(b) except the claimant cannot climb ladders, ropes, or scaffolds; can occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and crawl; can occasionally reach overhead; must avoid concentrated exposure to heat, cold, humidity, and vibration; must avoid slippery or uneven surfaces; and must avoid hazardous machinery or unprotected heights.  The claimant is limited to simple, retain, repetitive tasks, with only occasional interaction with supervisors, co-workers, and the public.

(*Id.* at 21).  The ALJ also determined that Plaintiff "is unable to perform any past relevant work (20 [C.F.R. §] 416.965)."  (*Id.* at 28).

At step five, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that "there are jobs that exist in significant numbers in the national economy that the claimant can perform.  (20 [C.F.R. §§] 416.969 and 416.969a)."  (*Id.* at 29).  Specifically, the ALJ, relying on Vocational Expert ("VE") testimony, found that Plaintiff could perform the following jobs that exist in significant numbers in the national economy:  Order Caller (DOT# 209.667-014); Routing Clerk (DOT# 222.687-022); and Mail Clerk (DOT# 207[.]067-026).  (*Id.*). For these reasons, the ALJ held that Plaintiff "has not been under a disability, as defined in the Social Security Act, since April 25, 2017, the date the application was filed (20 [C.F.R. §] 416.920(g))."  (*Id.*).

## IV.  Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (a court must scrutinize the entire record to determine reasonableness of factual findings).

**V.**      **Analysis**

On appeal, Plaintiff raises five issues.  As stated by the parties, the issues are:

1.      Whether the ALJ erred by finding that Plaintiff's cane is not "medically necessary;"

2.      Whether the ALJ erred in his assessment of the consultative examination;

3.      Whether the ALJ improperly substituted his lay opinion and analysis of objective evidence;

4.      Whether the ALJ erred by finding Plaintiff's bilateral knee impairments "non-severe;" and

5.      Whether the ALJ erred in discounting Plaintiff's subjective allegations.

(Doc. 30 at 42).  The Court addresses each issue in turn below.

**A.      Whether the ALJ Erred by Finding that Plaintiff's Cane Is Not "Medically Necessary."**

Plaintiff first argues that the ALJ erred in finding that Plaintiff's use of a cane was not "medically necessary."  (*Id.* at 43).  In support, Plaintiff essentially contends that the ALJ did not consider the facts and records particular to this case, instead relying only on the lack of a prescription.  (*See id.* at 43-44).

Plaintiff maintains that the record is "replete with facts, circumstances and medical documentation establishing the medical necessity of Plaintiff's cane even in the absence of a prescription."  (*Id.* at 44).  By way of example, Plaintiff cites and summarizes various records that he contends support the medical need for the cane. (*See id.* at 44-46 (citing Tr. at 499, 525, 527, 501, 705, 706-07, 708, 724, 771, 783,

794, 796, 799-800, 804, 806, 808-09, 846, 1032, 1037, 1049-50)).  Plaintiff maintains

that "the ALJ failed to discuss or even mention significant record evidence when

arriving at his conclusion that Plaintiff's cane is not 'medically necessary.'"  (*Id.* at

46).

Additionally, Plaintiff argues that the reasons "the ALJ did set forth, for

finding that Plaintiff's cane was not medically necessary, are undermined by the

actual evidence that the ALJ relied upon."  (*Id.* at 46).  In support, Plaintiff contends

that the ALJ only partially summarized the evidence, mischaracterized the evidence,

or ignored it altogether.  (*Id.* (citing Tr. at 26)).  Specifically, Plaintiff asserts that (1)

the testimony that the ALJ cited bolsters Plaintiff's allegations and (2) the ALJ only

generally referenced the "objective medical evidence of record."  (*Id.* at 46-47 (citing

Tr. at 26)).  Additionally, Plaintiff argues that additional testimony from the hearing

shows that the ALJ's finding is "unsupported and inconsistent with" the record.  (*Id.*

at 47-48 (citing Tr. at 53, 54-55, 64-65, 69, 70, 71-72)).  Thus, Plaintiff contends that

remand is warranted for both the ALJ's failure to consider the facts of the case

related to Plaintiff's use of a cane and for the ALJ's incomplete and inaccurate

characterization of Plaintiff's testimony.  (*Id.* at 48-49 (citation omitted)).

In response, Defendant contends that "[t]he ALJ identified evidence in

support of his conclusion that Plaintiff's use of a cane or other assistive device was

not medically necessary."  (*Id.* at 49 (citing Tr. at 26)).  In support, Defendant asserts

that the ALJ noted that none of the current treating providers indicated that a cane

was medically necessary, that Dr. Sean Kibria's reference to the cane appeared to be

a recitation of Plaintiff's allegations, and that Dr. Sean Kibria's records show "no more than moderate range of motion limitations, no evidence of weakness, no pronation, no atrophy, and no drift in any muscle groups." (*Id.* (citing Tr. at 26, 752)).  Additionally, Defendant highlights the ALJ's notation that Plaintiff "was able to mask the cane use when going to job interviews." (*Id.* at 49-50 (citing Tr. at 26, 54-55)).  Defendant also notes that the medical records related to Plaintiff's need for a cane were normal. (*Id.* at 50 (citations omitted)).

Finally, Defendant asserts that even if Plaintiff had been prescribed a cane, Plaintiff would have needed to introduce evidence describing the circumstances in which it was necessary. (*Id.* (citations omitted)).  Ultimately, Defendant maintains that "[g]iven the lack of documentation establishing a continuous need for an assistive device or the circumstances for which it would be needed, the ALJ appropriately did not incorporate the use of a cane in his RFC finding." (*Id.* (citation omitted)).

Social Security Rule 96-9p provides in relevant part that:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).  The adjudicator must always consider the particular facts of a case.  For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.

SSR 96-9p, 1996 WL 374185, at *7 (1996).[2]  If a plaintiff fails to provide "medical documentation (1) establishing the need for [his] cane or other device and (2) describing the circumstances for which it is needed," an ALJ need not include the use of a cane in the plaintiff's RFC.  *Kendrick v. Comm'r of Soc. Sec.*, No. 5:17-cv-244-Oc-GKS-PRL, 2018 WL 4126528, at *3 (M.D. Fla. July 9, 2018), *report and recommendation adopted,* No. 5:17-cv-244-Oc-18PRL, 2018 WL 4112832 (M.D. Fla. Aug. 29, 2018).

Importantly, "a prescription or the lack of a prescription for an assistive device is not necessarily dispositive of medical necessity."  *Id.* (citing *Staples v. Astrue*, 329 F. App'x 189, 191 (10th Cir. 2009); *Howze v. Barnhart*, 53 F. App'x 218, 222 (3d Cir. 2002)).  As a result, "[i]f . . . 'the record contains information showing a claimant uses a cane, an ALJ should explicitly consider whether the claimant has a medical necessity for using such a device and affirmatively reject [it], if appropriate, so the reviewing [c]ourt can be sure whether he intended to recognize use of a cane.'"  *Ortiz v. Saul*, No. 8:19-cv-199-T-CPT, 2020 WL 1527856, at *4 (M.D. Fla. Mar. 31, 2020) (second and third alteration in original) (quoting *Ebenroth v. Saul*, 2020 WL 583057, at *7 (S.D. Ga. Jan. 14, 2020)).

---

[2]  While SSR 96-9p addresses the use of hand-held devices in cases in which a plaintiff is limited to sedentary work, it has been applied to situations in which a plaintiff is limited to light work.  *See Ortiz v. Saul*, No. 8:19-cv-199-T-CPT, 2020 WL 1527856, at *4 n.6 (M.D. Fla. Mar. 31, 2020) (collecting cases).  Because both parties rely on SSR 96-9p in support of their arguments, the Court finds it persuasive here.

Here, the ALJ explicitly considered whether Plaintiff's use of a cane or other assistive device was medically necessary, citing several records to support his finding that it was not.  (Tr. at 26).  First, the ALJ noted that although Plaintiff's attorney argued that Dr. Sean Kibria opined that the cane was medically necessary, the ALJ found that Dr. Kibria's notes "[a]t best . . .indicate[] that [Plaintiff] reported that [his] cane was deemed medically necessary when prescribed by a doctor in 1994."  (*Id.*).  However, as the ALJ noted, "no medical records are available from that time."  (*Id.*).  Second, the ALJ noted that "none of the current treating providers indicate that [Plaintiff's] cane is medically necessary."  (*Id.*).  Third, the ALJ found that Dr. Sean Kibria's own physical examination contradicts a finding that the cane is medically necessary, highlighting that Dr. Kibria found "no more than moderate findings such as no more than moderate range of motion limitations, no evidence of weakness, no pronation, no atrophy, and no drift in any muscle groups."  (*Id.*).  Fourth, the ALJ noted that Dr. Sean Kibria is a podiatrist, and that the neurologist, Dr. Eshan Kibria, did not personally examine Plaintiff.  (*Id.* (citing Tr. at 752)).

Additionally, the ALJ noted Plaintiff's testimony regarding the use of his cane, highlighting that Plaintiff testified that (1) he was prescribed the cane in 1988 and continued to use it for the past 20+ years, including intermittently while working as a mechanic; (2) he relied on the cane more in the past 5 to 6 years; (3) he was previously able to mask the cane when attending job interviews; and (4) "he is not able to use the cane to stand for more than a moment."  (*Id.* (citations omitted)).  Moreover, while the ALJ noted that Plaintiff's adult functioning report reported that

he used a walker when he needed to stand for a long period of time, (*id.* (citing Tr. at 306-08)), the ALJ also highlighted that "nothing in the medical evidence of record references the claimant's use of a walker or knee braces or that any device is medically necessary." (*Id.*).  Having summarized this evidence, the ALJ concluded that "the objective medical evidence of record does not support the claimant's allegation that he requires a cane, or any assistive device, to stand or walk for more than a moment." (*Id.*).  Similarly, the ALJ concluded that "[t]he overall medical evidence of record strongly supports that the claimant can perform light work consistent with the [RFC] finding" and proceeded to discuss Plaintiff's "high functioning activities of daily living." (*Id.*).

Upon review, the Court finds that the ALJ properly considered whether the cane was medically necessary and substantial evidence supports his finding that it was not.  (*See id.*).

First, the Court finds that the ALJ correctly determined Dr. Sean Kibria was not qualified to give an opinion on the necessity of a cane, if indeed the statement constitutes an opinion.  (*See id.* at 26, 27-28).  Specifically, in finding Dr. Sean Kibria's consultative examination ("CE") unpersuasive, the ALJ specifically found invalid any portion that related to an examination above claimant's knees.  (*Id.* at 27-28).  As will be addressed below, in his second argument, Plaintiff does not attempt to argue that Dr. Sean Kibria's statement related to an examination below Plaintiff's knees.  (*See* Doc. 30 at 52-53).  Rather, Plaintiff asserts that because the examination was reviewed by and signed off by Dr. Eshan Kibria, a neurologist, it constitutes an

11

opinion by Dr. Eshan Kibria.  (*Id.*).  As will be discussed more fully below, the Court rejects this argument.  *See Maldonado v. Berryhill*, No. 18-CV-11255-ADB, 2019 WL 4921538, at *23 (D. Mass. Sept. 4, 2019), *report and recommendation adopted sub nom. Maldonado v. Saul*, No. 18-CV-11255-ADB, 2019 WL 4686705 (D. Mass. Sept. 26, 2019) (collecting cases in support of the proposition that "[a]n acceptable medical source who has no treating relationship with the claimant does not 'morph' into a treating source by affixing his signature to an opinion or report completed by a non-acceptable medical source who *does* have a treating relationship with the claimant").

Moreover, even if the evaluation is valid to some extent, the Court finds that the ALJ properly concluded that Dr. Sean Kibria's statement is contradicted by his ultimate findings.  (*See* Tr. at 26).  Specifically, as the ALJ noted, Dr. Sean Kibria found "no more than moderate findings such as no more than moderate range of motion limitations, no evidence of weakness, no pronation, no atrophy, and no drift in any muscle groups."  (*Id.*; *see also* Tr. at 752).  Because an ALJ may reject any opinion inconsistent with the objective medical evidence of record, the Court finds that the ALJ did not err in rejecting Dr. Sean Kibria's opinion, if it constitutes an opinion.  *See Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-cv-1108-J-MCR, 2019 WL 4686800, at *2 (M.D. Fla. Sep. 26, 2019) (noting that the "new regulations are not inconsistent with Eleventh Circuit precedent holding that 'the ALJ may reject any medical opinion if the evidence supports a contrary finding'") (citation omitted). Finally, the Court need not resolve whether the ALJ erred in finding that Dr. Sean Kibria's statement "[a]t best . . . indicates that [Plaintiff] reported that [his] cane was

deemed medically necessary when prescribed by a doctor in 1994," (*see* Tr. at 26), because any error would be harmless.  Specifically, because the ALJ properly considered and rejected the opinion, any error would not affect the outcome of the case.  *See Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877 (11th Cir. 2013) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)); *see also Edwards v. Sullivan*, 937 F.2d 580, 586 (11th Cir. 1991) (holding that remand is not warranted unless an error shows "unfairness" or "clear prejudice").

Second, although Plaintiff cites records in which various medical sources note that he uses a cane, (*see* Doc. 30 at 44-46), none of the records indicate or suggest that the author found the cane medically necessary or otherwise more than observed the use of a cane, (*see* Tr. at 499, 501, 525, 527, 705, 707-08, 724, 771, 783, 794, 799-800, 804, 806, 808-09, 1032, 1037).  Furthermore, none of the cited records describe the circumstances for which a cane would be necessary.  (*See id.*).  Without more, the Court finds that Plaintiff has failed to provide "medical documentation (1) establishing the need for [his] cane or other device and (2) describing the circumstances for which it is needed."  *See Kendrick*, 2018 WL 4126528, at *3; *see also Johnson v. Astrue*, No. 5:11-CV-1666-KOB, 2012 WL 4339507, at *13 (N.D. Ala. Sept. 18, 2012) (finding that the ALJ correctly rejected a claimant's alleged reliance on a cane when the claimant presented no medical documentation showing the need for the device and failed to show the circumstances for which a device is needed).

Finally, to the extent Plaintiff cites other evidence of record that he contends support a different conclusion, (Doc. 30 at 46-48), the Court finds this evidence does

not require remand.  Indeed, it is the ALJ's job to evaluate and weigh evidence and to resolve any conflicts in the record.  "In reviewing an ALJ's decision, [the Court] may not decide the facts anew, make credibility determination[s], or re-weigh the evidence, and [the Court] must affirm the ALJ's findings if they are supported by substantial evidence, even if the evidence preponderates against them."  *Jones v. Soc. Sec. Admin., Comm'r*, 695 F. App'x 507, 508 (11th Cir. 2017) (citing *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014); *Winschel v. Comm'r., Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011)).  Thus, the Court finds meritless Plaintiff's argument that either the additional records or Plaintiff's other testimony requires remand.  Accordingly, the Court affirms on this issue.

### B.  Whether the ALJ Erred in His Assessment of the Consultative Examination.

Plaintiff next argues that the ALJ erred in his assessment of the CE because he "improperly invalidated" the report.  (Doc. 30 at 51).  Specifically, Plaintiff argues that the ALJ improperly substituted his own opinion for that of a medical expert by determining that the CE report, which Plaintiff asserts included an opinion that the cane is medically necessary, was invalid.  (*Id.* (citing Tr. at 27-28, 751-56)).  Plaintiff maintains that the ALJ's reasons for rejecting the opinions in the CE report "are not supported by facts or law."  (*Id.* at 52).  Plaintiff highlights that the ALJ found that the opinion was not an opinion because Dr. Sean Kibria is a podiatrist and that neurologist Dr. Eshan Kibria did not personally examine Plaintiff.  (*Id.* (citing Tr. at 24, 26-27) (internal quotations omitted)).  Plaintiff asserts that "the CE report

14

contained all of the requisite criteria for validity, including the typed and credentialed signatures of both the neurologist" and the podiatrist, resulting in the report being a report by an acceptable medical source under the Program Operations Manual System ("POMS").  (*Id.* at 52-53 (citations omitted)).

Additionally, Plaintiff contends that the ALJ "relied on his unsupported speculation," to interpret the meaning of Dr. Sean Kibria's opinion by finding the opinion "indicate[s] that the claimant reported that the claimant's cane was deemed medically necessary when prescribed by a doctor in 1994."  (*Id.* at 53-54 (quoting Tr. at 26) (emphasis omitted)).  Plaintiff argues, however, that "the ALJ's interpretation is inaccurate and taken out of context."  (*Id.* at 54 (citing Tr. at 752)).  In support, Plaintiff highlights that the opinion was in the "objective examination" portion of the report, rather than the portion containing Plaintiff's subjective complaints.  (*Id.* at 54-55 (citing Tr. at 751-52)).

Finally, Plaintiff argues that "even if the ALJ's speculations and interpretations were true . . . the ALJ had a duty to develop the record."  (*Id.* at 55 (citing 20 C.F.R. § 404.1512(e)).  Plaintiff essentially asserts that because the ALJ did not recontact Dr. Sean Kibria, order another CE, or otherwise provide the Court with an adequate articulation of why he rejected the opinion, remand is appropriate. (*See id.*).

In response, Defendant argues that "[t]here is no articulation requirement under the new regulations for the statements of one-time examiner Dr. Kibria."  (*Id.* (emphasis omitted)).  In support, Defendant maintains that Dr. Sean Kibria's

statement that "cane prescribed by MD in 1994, medically necessary" is not an opinion, but rather is "Plaintiff's report transcribed in the medical records." (*Id.* at 55-56 (citing Tr. at 752)).

Defendant maintains that because Plaintiff applied for benefits after March 27, 2017, the new regulations apply to Plaintiff's case. (*Id.* at 53 (citations omitted)). Defendant explains the significance of the changes, including that the revised regulations redefined how evidence is categorized, redefined the term "medical opinion," and altered how the agency considers medical opinions and prior administrative medical findings. (*Id.* at 57-60 (citations omitted)).

Turning to the specifics of this case, Defendant argues that "Plaintiff must have relayed [the information regarding his cane] to Dr. Kibria, as it is not a summary of another doctor's note, because there are no doctors' notes circa 1994 in the record." (*Id.* at 61). Thus, Defendant maintains that "[t]he ALJ correctly stated Dr. Kibria did not offer an opinion under the regulations." (*Id.*).

Moreover, Defendant argues that although the ALJ was not required to evaluate Dr. Sean Kibria's findings, the ALJ did so throughout the opinion, specifically noting that the cane prescription was inconsistent with Dr. Sean Kibria's observation that "Plaintiff had no more than moderate range of motion limitations, no evidence of weakness, no pronation, no atrophy, and no drift in any muscle groups." (*Id.* at 61-62 (citing Tr. at 23-24, 26, 27-28, 752)). Defendant, therefore, asserts that Plaintiff's argument is meritless because Plaintiff did not show that the ALJ failed to evaluate any opinion. (*Id.* at 62).

In March 2017, the SSA implemented new regulations regarding the evaluation of medical evidence for claims, like Plaintiff's, filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.  Under these new regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from [a claimant's] medical sources."  20 C.F.R. § 416.920c(a).

The Social Security regulations define medical opinions as statements from physicians, psychologists, or other acceptable medical sources that reflect judgments about the nature and severity of impairments, including symptoms, diagnosis, and prognosis, what a claimant can still do despite impairments, and physical or mental restrictions.  20 C.F.R. § 416.927(a)(1).  Under the new regulations, an ALJ does not have to articulate how he "considered each medical opinion or prior administrative medical finding from one medical source individually."  20 C.F.R. § 416.920c(b)(1). "Other than articulating his consideration of the supportability and consistency factors, the Commissioner is not required to discuss or explain how he considered any other factor in determining persuasiveness."  *Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-cv-1108-J-MCR, 2019 WL 4686800, at *2 (M.D. Fla. Sep. 26, 2019) (internal citation omitted).  Furthermore, "nothing in the relevant regulations requires ALJs to apply an all-or-nothing approach when assessing a medical source's opinions."  *Hand v. Comm'r of Soc. Sec.*, 786 F. App'x 220, 225 (11th Cir. 2019).

Instead, the ALJ's RFC determination must merely be supported by substantial evidence.  42 U.S.C. § 405(g).

Importantly, the "new regulations are not inconsistent with Eleventh Circuit precedent holding that 'the ALJ may reject any medical opinion if the evidence supports a contrary finding.'"  *Freyhagen*, 2019 WL 4686800, at *2 (citing *Wainwright v. Comm'r of Soc. Sec. Admin.*, No. 6-15638, 2007 WL 708971, at *2 (11th Cir. Mar. 9, 2007)).  Nevertheless, the ALJ "is required to consider the opinions of non-examining state agency medical and psychological consultants because they are highly qualified physicians and psychologists, who are also experts in Social Security disability evaluation."  *Milner v. Barnhart*, 275 F. App'x 947, 948 (11th Cir. 2008); *see also* SSR 96-6p.

Here, the Court finds that substantial evidence supports the ALJ's decision to find the CE unpersuasive.  (*See* Tr. at 27-28).  First, the ALJ found invalid any portion of the examination in which Dr. Sean Kibria evaluated Plaintiff above the knees.  (*See id.*).  Second, to the extent Dr. Sean Kibria's statement that the cane was "deemed medically necessary" was an opinion, the ALJ found the opinion contradicted by Dr. Kibria's examination.  (*Id.* at 28).  Third, the ALJ found the statement inconsistent with Plaintiff's treating providers.  (*Id.* (citing Tr. at 714-50, 766-92, 812-837, 838-53, 854-1028, 1040-55)).  Accordingly, the ALJ found the examination unpersuasive.  (*Id.*).  The Court considers each basis in turn below.

First, the Court finds that the ALJ did not err in finding the examination invalid to the extent that Dr. Sean Kibria evaluated any part above the knees.

Plaintiff essentially argues that because neurologist Dr. Eshan Kibria's signed the report, the report constitutes a medical opinion by Dr. Eshan Kibria. (Doc. 30 at 52-53). According to the POMS[3] – on which Plaintiff relies to support his argument – a medical source is to be considered an acceptable medical source if he or she has taken a role in the care or evaluation and has a connection to the evidence – such as signing his or her name. *See* DI 22505.003(B)(1). Likewise, the POMs require that the medical source that performed the CE review and sign the CE report. *See* DI 22510.015.

Nevertheless, courts have rejected the argument that an acceptable medical source with no treating relationship with the claimant can transform an opinion into a treating source opinion by affixing his signature to an opinion by a non-acceptable medical source who has a treating relationship with the claimant. *See Maldonado v. Berryhill*, No. CV 18-11255-ADB, 2019 WL 4921538, at *23 (D. Mass. Sept. 4, 2019), *report and recommendation adopted sub nom. Maldonado v. Saul*, No. 18-CV-11255-ADB, 2019 WL 4686705 (D. Mass. Sept. 26, 2019) (co-signature of non-treating physician did not transform treating other medical source's opinion into a treating source opinion); *Resto v. Colvin*, Civil Action No. 15-30012-MGM, 2016 WL 1384779, at *5 (D. Mass. Apr. 7, 2016) (co-signature of non-treating acceptable medical source on an opinion by a treating "other" medical source did not transform

---

[3] The POMS is an internal Social Security Administration document outlining, *inter alia*, various policies of the Commissioner and while it does not have the force of law, it can be persuasive. *Stroup v. Barnhart*, 327 F.3d 1258, 1262 (11th Cir. 2003).

the opinion into a treating source opinion); *see also Lobov v. Colvin*, Civil Action No. 12-40168-TSH, 2014 WL 3386567, at *14 n.8 (D. Mass. June 23, 2014) (co-signature of acceptable medical source on an opinion completed by a therapist, without any actual evaluation of claimant, had no bearing on ALJ's discretion to disregard therapist's opinion).

Although these cases are not perfectly analogous, the Court finds the reasoning persuasive and instructive here.  Specifically, the Court finds that because a signature by an acceptable medical source who did not treat a patient and only reviewed a report cannot transform an opinion into a treating source opinion, neither can a signature by a neurologist having only reviewed the report of a podiatrist transform the report into an opinion by a neurologist.  Thus, the Court finds that Dr. Eshan Kibria's signature on the report does not transform it into an opinion by a neurologist.  (*See* Tr. at 752).  Additionally, because the signature block suggests that Dr. Eshan Kibria simply "reviewed" the report, the Court finds Dr. Eshan Kibia's role was supervisory, at best.  *See Maldonado*, 2019 WL 4921538, at *23.  Ultimately, the Court finds that Dr. Eshan Kibria was not expressing an opinion based on any examination of Plaintiff, but rather uncritically accepting the opinion of Dr. Sean Kibria.  (*See* Tr. at 752); *see also Maldonado*, 2019 WL 4921538, at *23.

Second, the Court finds that even if Dr. Eshan Kibria's signature validates the examination and the statement constitutes an opinion, substantial evidence supports the ALJ's decision to discredit the opinion.  (*See* Tr. at 27-28).  Specifically, the ALJ determined that Dr. Sean Kibria's note that Plaintiff's cane is medically necessary is

contradicted by his own examination and those of Plaintiff's treating providers.  (*See id.*).  As noted above, "the ALJ may reject any medical opinion if the evidence supports a contrary finding."  *Freyhagen*, 2019 WL 4686800, at *2 (citation omitted).  Here, the ALJ noted that Dr. Sean Kibria's notes show a normal examination of Plaintiff's lower extremities and includes findings that Plaintiff had a "well-developed normal muscle tone and strength, with no evidence of weakness or atrophy in any muscle group."  (Tr. at 28; *see also* Tr. at 752).  Additionally, the ALJ concluded that the asserted opinion was inconsistent with the general findings by all of Plaintiff's treating providers.  (*Id.* (citing Tr. at 714-50, 766-92, 812-837, 838-53, 854-1028, 1040-55)).

Upon review of the records cited by the ALJ, the Court finds that the treating providers' findings were generally normal as to Plaintiff's gait, strength, and range of motion.  (*See, e.g.*, *id.* at 752, 888, 952, 992).  Although the Court notes that there were some abnormal findings related to Plaintiff's gait, (*see, e.g.*, *id.* at 886, 912), the Court must affirm even if "the evidence preponderates against" the Commissioner's decision so long as – as here – substantial evidence supports the decision.  *See Edwards*, 937 F.2d at 584 n.3.

Because the Court affirms the ALJ's decision to discredit Dr. Sean Kibria's statement that the cane was "medically necessary" on its merits, the Court need not resolve whether the ALJ erred in finding the statement was merely a recitation of Plaintiff's statements.  Accordingly, the Court affirms on this issue.

C.     **Whether the ALJ Improperly Substituted His Lay Opinion and Analysis of Objective Evidence.**

As his third argument, Plaintiff asserts that "[t]he ALJ improperly substituted his own lay opinion and analysis of objective evidence for that of medical experts." (Doc. 30 at 62).  Specifically, Plaintiff essentially argues that when reviewing Dr. Sean Kibria's CE report, the ALJ provided a lay assessment of the examination and provided his own interpretation of Dr. Sean Kibria's findings.  (*See id.* at 62-63 (citing Tr. at 26)).  Plaintiff contends that the ALJ's interpretation is "inconsistent with Dr. Kibria's medical conclusions" and that the ALJ should have clarified the findings with Dr. Sean Kibria.  (*Id.* at 63).

Additionally, Plaintiff maintains that the ALJ relied on his own interpretation when he supported his findings by general references to the "objective evidence of record" and "the general findings of all of the claimant's treating providers" without providing the evidence leading to his conclusions.  (*Id.* at 63 (quoting Tr. at 26, 28)). Ultimately, Plaintiff maintains that the ALJ's decision is not supported by substantial evidence because he substituted his own interpretation of the evidence.  (*Id.* at 64).

In response, Defendant argues that "[t]here is no articulation requirement under the new regulations for the statements of one-time examiner Dr. Kibria."  (*Id.* (emphasis omitted)).  In support, Defendant maintains that under the new regulations, "an ALJ 'will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources.'"  (*Id.*

(alteration in original) (emphasis omitted) (quoting 20 C.F.R. § 416.920c(a); additional citations omitted)).  Additionally, Defendant contends that courts interpreting the former regulations have "found that an ALJ does not substitute his judgment for those of doctors by simply carrying out his regulatory role as an adjudicator who is responsible for assessing a claimant's RFC."  (*Id.* at 65 (citations omitted)).  Ultimately, Defendant maintains that "the ALJ had no duty to evaluate Dr. Kibria's findings."  (*Id.*).

Here, the Court reiterates that it is the ALJ's job to evaluate and weigh evidence and to resolve any conflicts in the record.  "In reviewing an ALJ's decision, [the Court] may not decide the facts anew, make credibility determination[s], or re-weigh the evidence, and [the Court] must affirm the ALJ's findings if they are supported by substantial evidence, even if the evidence preponderates against them." *Jones v. Soc. Sec. Admin., Comm'r*, 695 F. App'x 507, 508 (11th Cir. 2017) (citing *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014); *Winschel v. Comm'r., Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011)).

Additionally, the Court notes that the ALJ is responsible for determining the claimant's RFC, and he must consider the claimant's ability to meet the physical, mental, sensory, and other requirements of work.  20 C.F.R. § 416.946(c).  In doing so, the ALJ "is required to consider the opinions of non-examining state agency medical and psychological consultants because they are highly qualified physicians and psychologists, who are also experts in Social Security disability evaluation." *Milner v. Barnhart*, 275 F. App'x 947, 948 (11th Cir. 2008); *see also* SSR 96-6p.  Under

the new regulations, however, an ALJ does not have to articulate how he "considered each medical opinion or prior administrative medical finding from one medical source individually." 20 C.F.R. § 416.920c(b)(1). "Other than articulating his consideration of the supportability and consistency factors, the Commissioner is not required to discuss or explain how he considered any other factor in determining persuasiveness." *Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-cv-1108-J-MCR, 2019 WL 4686800, at *2 (M.D. Fla. Sep. 26, 2019) (internal citation omitted). Furthermore, the "new regulations are not inconsistent with Eleventh Circuit precedent holding that 'the ALJ may reject any medical opinion if the evidence supports a contrary finding.'" *Freyhagen*, 2019 WL 4686800, at *2 (citing *Wainwright v. Comm'r of Soc. Sec. Admin.*, No. 6-15638, 2007 WL 708971, at *2 (11th Cir. Mar. 9, 2007)).

Finally, an incorrect application of the regulations will result in a harmless error if a correct application of the regulations would not contradict the ALJ's ultimate findings. *Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877 (11th Cir. 2013) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)); *see also Edwards v. Sullivan*, 937 F.2d 580, 586 (11th Cir. 1991) (holding that remand is not warranted unless an error shows "unfairness" or "clear prejudice").

Here, even if the ALJ erred by referring to the findings as "normal," such error is harmless. Specifically, because the ALJ explained the evidence that he deemed to be "normal" – *i.e.*, the findings that Plaintiff "had well-developed normal muscle tone and strength, with no evidence of weakens or atrophy in any muscle

group" – the Court finds that the ALJ's interpretation of the evidence as "normal" would not constitute reversible error.  Rather, it appears that removing the word "normal" would moot Plaintiff's argument and yet the ALJ's ultimate conclusion would not change.  Thus, the Court finds that if the ALJ's use of the word "normal" could constitute a substitution of his judgment for the medical evidence, the error is nonetheless harmless.  *See Denomme*, 518 F. App'x at 877.

Moreover, the cases cited by Plaintiff in support of his argument are inapposite.  (*See* Doc. 30 at 62 (citing *Graham v. Bowen*, 786 F.2d 1113, 1115 (11th Cir. 1986); *Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982))).  Specifically, unlike in the instant case in which the ALJ broadly *characterized* the evidence as normal but stated the medical evidence on which he relied, (*see* Tr. at 27-28), the cases cited by Plaintiff involve a situation in which the ALJ relied on his own observation of Plaintiff to reach an ultimate conclusion, *see Graham*, 786 F.2d at 1115 (concluding that it was improper for the ALJ to substitute medical evidence presented for his own observation that the claimant "appeared moderately handicapped in her gait"); *Freeman*, 681 F.2d at 731 (concluding that it was improper for the ALJ to make a medical assessment of pain based on a "sit and squirm" test at the hearing).

Additionally, to the extent Plaintiff argues that the ALJ relied on his own lay interpretation of other medical evidence because he summarily rendered his findings with a broad reference to the "general findings of all of claimant's treating providers," the Court finds the argument meritless.  Specifically, although the ALJ

did not set forth the specific evidence on which he relied, the ALJ thoroughly
discussed the findings of Plaintiff's treating providers earlier in the same decision,
including those of Dr. Acosta, Dr. Goforth, Dr. Drahos, and ARNP Calderone.  (*See*
Tr. at 22-25).  Importantly, "'there is no rigid requirement that the ALJ specifically
refer to every piece of evidence in his decision, so long as the ALJ's decision' enables
the district court 'to conclude that the ALJ considered [the claimant's] medical
condition as a whole.'"  *Adams v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 531, 533
(11th Cir. 2014) (alteration in original) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211
(11th Cir. 2005)).  Because the ALJ had thoroughly discussed the findings of
Plaintiff's treating providers earlier in the same decision, the Court finds that the ALJ
did not err in broadly referencing the general findings because it is clear to the Court
that the ALJ considered Plaintiff's medical condition as a whole.  *See id.*

In sum, the Court finds that remand is not warranted on this ground.

### D.   Whether the ALJ Erred by Finding Plaintiff's Bilateral Knee Impairments "Non-Severe."

Next, Plaintiff argues that "the ALJ erred by finding [Plaintiff's] bilateral knee
impairments are non-severe."  (Doc. 30 at 65 (citing Tr. at 17-18)).  In support,
Plaintiff contends that the ALJ failed to provide a logical relation from the evidence
to his conclusion that the impairments produced no more than minimal limitations
on Plaintiff's ability to perform work-related activities.  (*Id.* at 65-66 (citing Tr. at 17-
18)).  Additionally, Plaintiff asserts that the ALJ's rationale is not harmless because
"the ALJ is required to consider the impact of impairments even if he considers them

to be 'non-severe' impairments" and the ALJ must state the grounds for his decision. (*Id.* at 66 (citation omitted)).

In support, Plaintiff contends that the records the ALJ cited in support of his conclusion that Plaintiff's bilateral knee impairments are "non-severe" support the impairment's severity. (*Id* at 66-67 (citing Tr. at 17-18)). Thus, Plaintiff argues that "it cannot be determined . . . *how* [the ALJ] arrived at this conclusion." (*Id.* at 68 (emphasis in original)).

Additionally, Plaintiff argues that in assessing the severity of Plaintiff's bilateral knee impairments, "the ALJ relied on his factually incorrect assertion that 'there are no other treatment records available to substantiate any limitations lasting more than one year.'" (*Id.* (quoting Tr. at 18). In support, Plaintiff appears to argue that because the alleged onset date is April 25, 2017, and the record contains evidence related to bilateral knee impairments in 2018, "the ALJ's finding that the 12-month durational requirement has [not] been met is clearly erroneous." (*See id.* at 68-69 (citing Tr. at 18, 23, 523-24, 527-28, 547-48, 825-26, 859, 881, 883-84, 926, 938, 942, 949-50, 968, 977, 989-90, 994, 1012, 1021)).

In response, Defendant argues that "[s]ubstantial evidence supports the ALJ's step two finding." (*Id.* at 69 (emphasis omitted)). In support, Defendant contends that because the ALJ found that Plaintiff had severe impairments, (*id.* at 69-70 (citing Tr. at 17-19)), the ALJ could not have erred, (*id.* at 70 (citing *Perry v. Astrue*, 280 F. App'x. 887, 893-94 (11th Cir. 2008))). Additionally, Defendant asserts that Plaintiff failed to show that his bilateral knee impairments caused additional limitations and

that Plaintiff cannot show that his combined impairments prevented him from performing his RFC.  (*Id.* at 70 (citations omitted)).

Additionally, Defendant argues that the ALJ properly found that Plaintiff's bilateral knee impairment produces no more than minimal limitations on Plaintiff's ability to perform work related activities.  (*Id.* at 70-72).  In support, Defendant summarizes the evidence that the ALJ relied on to support his conclusion.  (*Id.* at 71-72 (citing Tr. at 17, 18, 685, 714, 724, 752, 771, 819-20)).  Defendant also maintains that to the extent Plaintiff argues that additional evidence supports a disability limitation, "[t]he issue . . . is not whether some evidence might support Plaintiff's allegations or even whether the evidence preponderates against the ALJ's decision; the issue is whether substantial evidence supports the ALJ's findings."  (*Id.* at 72 (citations omitted)).  Thus, Defendant argues that rather than cite evidence that supports his position, Plaintiff must show the lack of substantial evidence supporting the ALJ's decision.  (*Id.* (citation omitted)).

In sum, Defendant contends that substantial evidence supports the ALJ's finding that "the evidence in the record is insufficient to establish that the condition of bilateral knee impairments resulted in more than minimal work-related restrictions persisting at least 12 months."  (*Id.* at 72-73 (citations omitted)).

At step two, "[a]n impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).  A severe impairment must

bring about at least more than a minimal reduction in a claimant's ability to work and must last continuously for at least twelve months.  *See* 20 C.F.R. § 404.1505(a). This inquiry "acts as a filter" so that insubstantial impairments will not be given much weight.  *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987).  While the standard for severity is low, the severity of an impairment "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality."  *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).

In the Eleventh Circuit, however, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe."  *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010).  Instead, the ALJ is only required to consider a claimant's impairments in combination, whether severe or not.  *Id.*  If any impairment or combination of impairments qualifies as "severe," step two is satisfied and the claim advances to step three.  *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 852 (11th Cir. 2013) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)).  "[B]eyond the second step, the ALJ must consider the entirety of the claimant's limitations, regardless of whether they are individually disabling."  *Griffin v. Comm'r of Soc. Sec.*, 560 F. App'x 837, 842 (11th Cir. 2014) (internal citations omitted).

Here, the ALJ found that Plaintiff suffered from the following severe impairments:  cervical degenerative disc disease; spondylosis of lumbar region without myelopathy or radiculopathy; myalgia; depression; and anxiety.  (Tr. at 17).

Thus, the ALJ found that Plaintiff met the requirements at step two and continued with the sequential evaluation.  (*See id.*).

In addition, so long as the ALJ considered Plaintiff's severe impairments in combination with Plaintiff's non-severe impairments – including his alleged bilateral knee impairments – any potential error is harmless.  *See Griffin*, 560 F. App'x at 841-42.  Here, the ALJ stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 [C.F.R. §] 416.929 and SSR 16-3p." (Tr. at 21).  Based on the ALJ's review of the medical records in the decision, the Court finds no error because the ALJ considered all of Plaintiff's impairments, whether severe or non-severe, in combination.  Therefore, any potential error by the ALJ is harmless.  *See Griffin*, 560 F. App'x at 841-42.

Moreover, a review of the record shows that the ALJ specifically considered Plaintiff's bilateral knee impairments at step two.  (Tr. at 17-18).  The ALJ reviewed treatment notes addressing the impairments and the improvement following treatment and determined that the impairments are not severe.  (*See id.*).  To that end, the ALJ specifically noted the records Plaintiff cites, including the findings that Plaintiff argues are abnormal.  (*See id.*).  Thus, to the extent that Plaintiff attempts to argue that the ALJ did not adequately consider the records, the Court finds the argument meritless.  Rather, the ALJ considered the evidence, including findings related to the bilateral knee impairment and, nonetheless, found the impairments non-severe.  (*See id.*).  To the extent Plaintiff disagrees with the ALJ's interpretation

of the evidence, that is not grounds for remand.  *See Sarria v. Comm'r of Soc. Sec.*, 579

F. App'x 722, 724 (11th Cir. 2014).

Further, the ALJ considered the findings when evaluating Plaintiff's RFC.

"The [RFC] is an assessment, based upon all of the relevant evidence, of a claimant's

remaining ability to do work despite his impairments."  *Lewis v. Callahan*, 125 F.3d

1436, 1440 (11th Cir. 1997).  An individual's RFC is his ability to do physical and

mental work activities on a sustained basis despite limitations secondary to his

established impairments.  *Delker v. Comm'r of Soc. Sec.*, 658 F. Supp. 2d 1340, 1364

(M.D. Fla. 2009).  In determining a claimant's RFC, the ALJ must consider all of

the relevant evidence of record.  *Barrio v. Comm'r of Soc. Sec.*, 394 F. App'x 635, 637

(11th Cir. 2010).  However, the Eleventh Circuit has consistently held that "the

claimant bears the burden of proving that he is disabled, and consequently, he is

responsible for producing evidence in support of his claim."  *Ellison v. Barnhart*, 355

F.3d 1272, 1276 (11th Cir. 2003).

As noted above, when determining Plaintiff's RFC, the ALJ stated that he

considered all of Plaintiff's symptoms and the extent to which these symptoms can

reasonably be accepted as consistent with the objective medical evidence and other

evidence.  (Tr. at 21); *see Griffin*, 560 F. App'x at 842 (citing *Jones v. Dep't of Health &

Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991) (noting a simple expression of

the ALJ's consideration of the combination of impairments constitutes a sufficient

statement of such findings).  Additionally, the ALJ incorporated by reference Dr.

Draho's findings related to Plaintiff's knees, previously addressed at step two.  (*See*

31

Tr. at 23).  Additionally, the ALJ noted Ms. Brenda Listowski, ANRP's notation regarding Plaintiff's knee tenderness, (*id.* (citing Tr. at 994)), Mr. Lewis Claderone, ARNP's notation regarding Plaintiff's limited bilateral lower extremity range of motion, (*id.* (citing Tr. at 1049-53)), and Dr. Sean Kibria's findings of bilateral knee pain and effusion, (*id.* (citing Tr. at 752)).  Thus, it is clear to the Court that the ALJ considered the bilateral knee impairments when determining the RFC.  (*See id.*). Accordingly, to the extent the ALJ erred in finding the impairments non-severe, any error is harmless.  *See Griffin*, 560 F. App'x at 841-42.

As a final matter, the Court also notes that Plaintiff has made no attempt to argue what limitations should have been imposed or to cite any medical opinion in which an acceptable medical source found that Plaintiff has such limitations.  (Doc. 30 at 65-69).  In failing to articulate any additional limitation that he asserts should have been imposed – or otherwise cite an opinion in which a medical source found that a limitation was necessary – Plaintiff failed to meet his burden to show he is disabled.  *See Ellison*, 355 F.3d at 1276.

## E.   Whether the ALJ Erred in Discounting Plaintiff's Subjective Allegations.

Finally, Plaintiff asserts that the ALJ made several errors in discounting Plaintiff's subjective allegations.  (*Id.* at 73).  Specifically, Plaintiff asserts that the ALJ erred as follows:

> (1) he partially summarized and mischaracterized the evidence; (2) he selectively picked and chose from the record (some from before the relevant period); (3) he relied

on what he believed was the Plaintiff's ability to perform activities that were only mundane in nature, and the activities he identified have no relation to the ability to stand and/or walk; and (4) he made statements at the hearing about Plaintiff's course of treatment that suggest his ability to adjudicate Plaintiff's claim was compromised.

(*Id.*).

Plaintiff contends that although "the ALJ repeatedly discredits Plaintiff's subjective allegations by citing to what he characterized as 'high functioning' activities of daily living 'like shopping online, reading novels, doing household chores, listening to music, and parenting,'" the courts "have repeatedly held [that these activities] are not indicative of a claimant's ability to perform competitive full-time work." (*Id.* at 74 (citing Tr. at 6, 28)). Moreover, Plaintiff argues that the activities have no relationship to Plaintiff's ability to stand and walk. (*Id.* (citing Tr. at 26, 28)).

Additionally, Plaintiff contends that the ALJ "made statements at the hearing which suggest that his ability to adjudicate this claim fairly may have been compromised because of personal bias about Plaintiff's treatment regimen." (*Id.* at 75). In support, Plaintiff highlights the ALJ's comment that "Pain Management doctors 'are suspect throughout Florida' and that 'their name alone raises eyebrows,'" referring both to pain management doctors generally and Plaintiff's pain management physician. (*Id.*). As a result, Plaintiff asserts that "it was an abuse of the ALJ's discretion to assess Plaintiff's credibility when the ALJ had a predisposition about the nature of Plaintiff's course of treatment" and that "[t]he

ALJ did not explain whether he reconciled this predisposition and provided no discussion of it in his decision."  (*Id.*).

In response, Defendant argues that "[s]ubstantial evidence supports the [ALJ's] evaluation of Plaintiff's subjective complaints."  (*Id.* at 75-76 (emphasis omitted)).  In support, Defendant notes that 20 C.F.R. § 416.929 governs the ALJ's evaluation of subjective complaints and the Eleventh Circuit's pain standard is consistent with 20 C.F.R. § 416.929.  (*Id.* at 76 (citations omitted)).  Further, Defendant maintains that "[a] court 'will not disturb a clearly articulated' finding about subjective complaints supported by substantial evidence."  (*Id.* at 77 (citing *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014))).

Essentially, Defendant contends that the ALJ properly found Plaintiff's subjective complaints unsupported and the ALJ provided record citations.  (*See id.* at 77-78 (citing Tr. at 21-28, 515, 655, 715, 718, 724, 727, 733, 752, 771, 777, 783, 786, 833, 850, 861)).

Additionally, Defendant contends that the ALJ properly considered Plaintiff's daily activities when assessing Plaintiff's credibility, highlighting that Plaintiff "was able to complete household chores and . . . wipe down counters, do dishes, sweep, lightly dust, clean up after his daughter, and let the dog outside, read books, as well as exercise three times a day."  (*Id.* at 78 (citing Tr. at 26, 51-53)).

Moreover, Defendant maintains that the ALJ properly considered Plaintiff's treatment, including considering Plaintiff's improvement resulting from treatment.  (*Id.* at 78-79 (citations omitted)).

In sum, Defendant argues that the ALJ properly found Plaintiff's subjective complaints unsupported and substantial evidence supports the decision. (*Id.* at 79 (citations omitted)). Accordingly, Defendant maintains that the opinion is due to be affirmed. (*Id.* (citation omitted)).

To establish disability based on testimony of pain and other symptoms, a plaintiff must satisfy two prongs of the following three-part test: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.3d 1221, 1223 (11th Cir. 1991)). After an ALJ has considered a plaintiff's complaints of pain, the ALJ may reject them, and that determination will be reviewed to determine if it is based on substantial evidence. *Moreno v. Astrue*, 366 F. App'x 23, 28 (11th Cir. 2010) (citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)). If an ALJ discredits the subjective testimony of a plaintiff, then he must "articulate explicit and adequate reasons for doing so. Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true." *Wilson*, 284 F.3d at 1225 (internal citations omitted). Nevertheless, the Eleventh Circuit has stated that "[t]he question is not . . .whether [the] ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

Factors an ALJ considers in evaluating a plaintiff's subjective symptoms include:

1. Daily activities;

2. The location, duration, frequency, and intensity of pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p, 2016 WL 1119029, at *7 (2016); 20 C.F.R. § 416.929; *see also Moreno*, 366 F. App'x at 28 (citing 20 C.F.R. § 404.1529(c)(3)).  "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court."  *Foote*, 67 F.3d at 1562.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's alleged symptoms, but his statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical and other evidence of record

for the reasons the ALJ stated in his decision.  (Tr. at 22).  Specifically, the ALJ noted Plaintiff's allegations of:  (1) difficulty sitting, standing, walking, and lifting any amount of weight repetitively; (2) an inability to ambulate or stand more than a moment without the use of a cane or other assistance; (3) mental health impairments; (4) difficulty in doing any tasks on a sustained, repetitive basis due to difficulties in concentrating and remembering; and (5) medication side effects such as difficulty focusing when driving.  (*Id.*).  The ALJ, however, contrasted this testimony with Plaintiff's mild medical imaging, normal to no more than moderate physical examination findings, and normal to no more than moderate mental status examination findings and Plaintiff's high functioning daily activities.  (*Id.* at 22, 25).  The ALJ also discussed in depth Plaintiff's medical records.  (*Id.* at 22-26).  After considering Plaintiff's subjective symptoms and the associated medical evidence, the ALJ made a determination, supported by substantial evidence, that Plaintiff could perform light work activity except as limited by the RFC finding.  (*Id.* at 21, 28).

Moreover, the Court finds unavailing Plaintiff's argument that Plaintiff's daily activities have no reasonable relationship to Plaintiff's ability to stand.  (*See* Doc. 30 at 74).  While Plaintiff is correct that "shopping online" and "reading novels" do not relate to the ability to walk or stand, the ALJ was also addressing Plaintiff's alleged symptoms of his mental impairments.  (*See* Tr. at 24-25).  Moreover, to the extent Plaintiff argues that "there is no evidence in the record to suggest that the limited 'household chores' or 'parenting' that Plaintiff did engage in required standing or walking," (*id.*), the Court finds that Plaintiff's argument essentially requests the

Court to reweigh the evidence, which the Court cannot do. *See Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). Indeed, as noted above, "[t]he question is not . . .whether [the] ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner*, 421 F. App'x at 939.

Nevertheless, the Court also notes that the ALJ did not rely on Plaintiff's activities of daily living as the sole support for his subjective symptom evaluation. Rather, the ALJ also expressly considered Plaintiff's imaging findings, objective findings from physical examinations, and routine and conservative medical treatment. (Tr. at 22-26). Ultimately, the subjective symptom evaluation is the province of the ALJ and this Court declines to disturb it in light of the substantial supporting evidence in the record cited by the ALJ. *See Foote*, 67 F.3d at 1562. In light of the ALJ's articulation of evidence that he found to be inconsistent with Plaintiff's allegations, the Court will not disturb the finding. *See id.*

Additionally, the Court finds unavailing Plaintiff's argument that the ALJ's statements at the hearing suggest the ALJ's inability to consider fairly Plaintiff's treatment regimen. (*See* Doc. 30 at 75). While the ALJ stated that there is suspicion[4] regarding pain management doctors "throughout Florida" and that "the name [he]

---

[4] The Court notes that the ALJ actually stated that "there's suspect" regarding pain management doctors throughout Florida. (Tr. at 76). The word "suspect" does not make grammatical sense. Given the nature of the conversation between the ALJ and Plaintiff's counsel, (*see id.*), the Court interprets the ALJ's comment as suggesting suspicion regarding pain management doctors.

think[s] implies people raise their eyebrows," (Tr. at 76), the ALJ also noted that his own wife is a pain management doctor, (*id.*). Additionally, the ALJ specifically stated that he would consider Plaintiff's argument related to Dr. Acosta, Plaintiff's pain management doctor. (*See id.* at 78). Moreover, nothing in the decision itself suggests that the ALJ was unable to consider Plaintiff's treatment fairly. Rather, the ALJ thoroughly and objectively discussed Plaintiff's treatment regimen with Dr. Acosta. (*See* Tr. at 22-23). Without more, the Court finds that the ALJ's statements do not give rise to even a risk of prejudice.

As to Plaintiff's remaining arguments on this issue, the Court finds that Plaintiff has abandoned them. *See Stowe v. Soc. Sec. Admin., Comm'r*, No. 20-14025, 2021 WL 2912477, at *7 (11th Cir. July 12, 2021) (citing *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) for the proposition that "a party abandons a claim not adequately briefed on appeal and fails to adequately brief [a] claim when he raises it in a perfunctory manner without supporting arguments or authority"). Other than broadly alleging that the ALJ erred because (1) "he partially summarized and mischaracterized the evidence; [and] (2) he selectively picked and chose from the record (some from before the relevant period)," Plaintiff offers no supporting argument for the Court to consider. (*See* Doc. 30 at 73). Plaintiff's failure to cite a single statement or record in support of these arguments leaves the Court unable to properly consider them. As such, the Court finds the arguments abandoned. *See Stowe*, 2021 WL 2912477, at *7.

In sum, the Court finds that the ALJ provided an in-depth analysis of Plaintiff's subjective symptoms and considered them thoroughly in the decision.  The ALJ considered Plaintiff's mild medical imaging, normal to no more than moderate physical examination findings, and normal to no more than moderate mental status examination findings, Plaintiff's high function daily activities, and the medical record as a whole.  The ALJ provided clearly articulated reasons supported by substantial evidence of record to reject Plaintiff's extreme allegations of pain.  Accordingly, the Court finds that the ALJ did not err in his subjective symptom determination and this determination is supported by substantial evidence.

## VI.  Conclusion

Upon consideration of the parties' submissions and the administrative record, the Court finds the ALJ's decision is due to be affirmed.  Accordingly, the Court **ORDERS** that:

1.  The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

2.  The Clerk of Court is directed to enter judgment accordingly, to terminate any pending motions and deadlines, and to close the case.

**DONE AND ORDERED** in Fort Myers, Florida on September 8, 2021.

_____

Mac R. McCoy
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties